IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER BROWNING,

          Plaintiff,

vs.                                        Case No. 10-1320-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 22, 2009, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 18-26). Plaintiff alleges that she has been disabled since April 23, 2005 (R. at 18). Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 20). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date (R. at 20). At step two, the ALJ found that plaintiff had the following severe impairments: depression or mood disorder

4

and post traumatic stress disorder (R. at 20).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21).  After determining plaintiff's RFC (R. at 22), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 24).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 24-25).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III.  Did the ALJ err in his consideration of the opinions of Dr. Pankow, plaintiff's treating psychiatrist?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given

5

particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;

6

(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

Dr. Pankow filled out a medical source statement on March 6,

2008 that found that plaintiff had poor or no ability to perform

in 6 out of 14 categories of mental abilities critical for

performing unskilled work; he further found that she only had a

fair[1] ability in 4 other categories, and a good ability to

perform in the remaining 4 categories (R. at 295-296).  He

further opined that her impairments met listed impairments 12.04

(affective disorders) and 12.06 (anxiety-related disorders) (R.

at 297-299).  The ALJ accorded "little" weight to his opinions

_____

[1]"Fair" was defined on the form filled out by Dr. Pankow as
meaning a substantial loss of ability to perform the named
activity in regular, competitive employment, and, at best, could
do so only in a sheltered work setting where special
considerations and attention are provided (R. at 295).

7

(R. at 23).

Dr. Hutchison, a psychologist, did not treat or examine the plaintiff, but offered opinions on June 28, 2008 after reviewing the medical records (R. at 311).  He opined that plaintiff's impairments do not meet or equal a listed impairment (R. at 312). He found that plaintiff had moderate[2] impairments in 7 categories (R. at 313-314).  The ALJ adopted those impairments in plaintiff's RFC (R. at 22), and found that, based on the statement of the vocational expert, that a person with those limitations could perform other work in the national economy (R. at 24-25, 149-151).

The ALJ provided the following explanation for the relative weight he accorded to the opinions of Dr. Pankow and Dr. Hutchison:

> As for the opinion evidence, the opinion of
> the claimant's physician Larry Pankow, M.D.
> (Exhibit 7F) is not supported by his own
> treating notes (Exhibit 5F) or those of the
> therapist and nurse practitioner as stated
> above which included notes that are
> approximately the same date as when Exhibit
> 7F was completed, and therefore is given
> little weight. There is nothing in Dr.
> Pankow's notes which indicate claimant has
> poor to no ability to function in the areas
> marked by Dr. Pankow except for a brief time
> when she decompensated and her daughter was
> removed from her home. Also little weight is

---

[2]"Moderate" was defined on the form filled out by Dr. Hutchison as meaning that there is more than a slight limitation in this area but the individual is still able to function satisfactorily (R. at 313).

> given to the State agency physicians as they
> did not find that the claimant had any severe
> impairment at all. (Exhibit 3F) More weight
> is given to the opinion of Dr. Hutchison that
> the claimant has only moderate limitations in
> her ability to get along with others and
> perform work activities, as it is supported
> by the record as a whole.
> (Exhibit 9F)

(R. at 23-24).

Defendant, in his brief, argues that the "ALJ properly found
that Dr. Pankow was not a 'treating source' because he only
reviewed Plaintiff's file and did not actually see Plaintiff (Tr.
374)" (Doc. 11 at 5).  However, defendant's brief misstates the
record.  The transcript shows that the ALJ stated the following:

> I'm not even sure he's [Dr. Pankow] a medical
> source.  I haven't seen that he's ever seen
> the woman.  I mean you -- if he just reviewed
> the file, then that may be a source, but he's
> not a treating source.

(R. at 374, emphasis added).  Thus, at the hearing, the ALJ
raised the question as to whether Dr. Pankow was a treating
source, but he made no finding or determination that Dr. Pankow
was not a treating source.  Dr. Pankow, in his statement,
indicated that he treated the plaintiff from March 6, 2007
through March 6, 2008, the date he provided the opinion.  He
further stated that his opinions were based on evaluation and
monitoring of the symptoms of her psychiatric condition on a
monthly basis through medication management appointments (R. at
300).  In his written decision, the ALJ stated that "the opinion

9

of the <u>claimant's physician</u> Larry Pankow, M.D. (Exhibit 7F) is
not supported by <u>his own treating notes</u> (Exhibit 5F)..." (R. at
23, emphasis added).  Therefore, in his written decision, the ALJ
referred to Dr. Pankow as plaintiff's physician and referenced
Dr. Pankow's treating notes in Exhibit 5F.  Thus, although the
ALJ raised the question at the hearing as to whether Dr. Pankow
was a treating source, the ALJ did not find, as asserted by
defendant in his brief, that Dr. Pankow was not a treating
source.  In fact, the ALJ's written decision indicates that the
ALJ considered Dr. Pankow a physician who treated the plaintiff.

A treating source opinion is entitled to controlling weight
only if well supported by clinical and laboratory diagnostic
techniques and if it is not inconsistent with other substantial
evidence in the record.  In the case before the court, the
opinions of Dr. Hutchison are substantial evidence that is
clearly inconsistent with the opinions of Dr. Pankow.  Thus, the
ALJ had a reasonable basis for not giving controlling weight to
the opinions of Dr. Pankow.  The next question is whether the ALJ
provided a reasonable basis for giving "little" weight to his
opinions.

In his decision, the ALJ found that the opinions of Dr.
Pankow were not supported by his own treating notes, or the
treating notes of the therapist and nurse practitioner.  The ALJ
further stated that there is nothing in Dr. Pankow's notes which

10

indicate that the plaintiff has poor to no ability to function in the areas marked by Dr. Pankow except for a brief time when she decompensated (R. at 23).  The ALJ erroneously stated that the treatment notes "included notes that are approximately the same date as when Exhibit 7F was completed" (R. at 23).  However, the last treatment note in the record was dated January 24, 2008 (R. at 261); Dr. Pankow prepared his medical source statement (Exhibit 7F) six weeks later, on March 6, 2008 (R. at 300).  The record does not include any treatment notes on approximately the same date as March 6, 2008.

Furthermore, if the treatment records do not support, or are inconsistent with the limitations set forth by Dr. Pankow, the ALJ should identify what in the treatment records do not support or are inconsistent with the limitations set forth by Dr. Pankow.  Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011); Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004).  As the court stated in Cagle v. Astrue, 266 Fed. Appx. 788, 794 (10th Cir. Feb. 25, 2008)(emphasis added):

> Again, the ALJ's reason for assigning "little probative weight" to Dr. Galles's September 2003 RFC assessment was that there were "troubling inconsistencies in Dr. Galles'[s] records." Aplt.App., Vol. II at 23. We faced an analogous situation in *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir.2004), where an ALJ declined to give a treating physician's opinion controlling weight because, among other things, the opinion was "not supported by objective medical evidence in th[e] case, including his own records."

*Id*. at 1122. We remanded the matter in part
because "the ALJ failed to explain or
identify what the claimed inconsistencies
were between [the treating physician's]
opinion and the other substantial evidence in
the record," and concluded that the ALJ's
reasoning was not "sufficiently specific to
enable this court to meaningfully review his
findings." *Id*. at 1123 (quotation omitted).
Even after conducting an independent review
of the record in its entirety, we were unable
to identify any obvious inconsistencies to
which the ALJ might have been referring. *Id*.
at 1122-23.

Here the ALJ did not identify what the
"troubling inconsistencies" were in Dr.
Galles's medical records, and we are unable
to find any obvious inconsistencies in Dr.
Galles's own records that might undermine his
assessment of either Mr. Cagle's
retrospective RFC (that he was unable to work
from October 16, 2002, through October 1,
2003) or his prospective ability to work
subject to certain restrictions...Thus, as in
*Langley*, we are unable to meaningfully review
the ALJ's reason for the weight he gave to
Dr. Galles's RFC assessment.

As in <u>Langley</u> and <u>Cagle</u>, the ALJ failed to identify what in

the treatment records do not support, or are inconsistent with,

the limitations set forth by Dr. Pankow.  Therefore, the court

finds that the ALJ's reasons for giving little weight to Dr.

Pankow's opinions are not sufficiently specific to enable the

court to meaningfully review his findings.  <u>Langley</u>, 373 F.3d at

1122-1123; <u>see</u> <u>Shontos v. Barnhart</u>, 328 F.3d 418, 426-427 (8th

Cir. 2003)(The ALJ's assertion that these source's opinions were

inconsistent with the record is not borne out by the record.  At

most, the record is deficient in documentation to support their

opinions).

In addition, the court is unable to find anything in the treatment records that do not support or are clearly inconsistent with his opinions.  Dr. Pankow rated plaintiff's ability in the following areas as poor or none:

> 4.  The ability to maintain attention for extended periods of 2 hour segments.
>
> 5.  The ability to maintain regular attendance and be punctual within customary tolerances.
>
> 6.  The ability to sustain ordinary routine without special supervision.
>
> 7.  The ability to work in coordination with or in proximity to others without being (unduly) distracted by them.
>
> 9.  The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.
>
> 11.  The ability to accept instructions and respond appropriately to criticism from supervisors.

(R. at 295-296).  Dr. Pankow rated plaintiff's ability in the following areas as fair (substantial loss of ability to perform activity in regular, competitive employment; at best, could do so only in sheltered work setting):

> 1.  The ability to remember work-like procedures.
>
> 8.  The ability to make simple work-related decisions.

> 10.  The ability to ask simple questions or
> request assistance.
>
> 13.  The ability to respond appropriately to
> changes in a routine work setting.

(R. at 295-296).  The court did not find anything in the
treatment notes that specifically addressed plaintiff's ability
to perform activities in any of the above categories.  The
treatment notes are largely silent regarding plaintiff's ability
to perform activities in these categories.

Furthermore, the only reason given by the ALJ for
discounting the opinions of Dr. Pankow is that the opinions of
Dr. Pankow are not supported by the treatment notes.  In the
recent case of <u>Andersen v. Astrue</u>, 319 Fed. Appx. 712, 722-723
(10th Cir. Apr. 3, 2009), the court held as follows:

> We also find that the ALJ's apparent failure
> to consider any factor other than
> supportability makes the ALJ's reasoning
> insufficient. It is certainly correct to
> consider the amount of objective support for
> the conclusions expressed in treating
> physicians opinions and the reasoning the
> physicians provide. <u>See</u> 20 C.F.R. §
> 404.1527(d)(3) (noting that the more a
> medical source is supported by other
> findings, the more weight the source is
> given). In this case, however, we cannot
> uphold the ALJ's decision based solely on
> supportability. There is no indication that
> the ALJ considered any relevant factor under
> § 404.1527(d) other than supportability
> before assigning these opinions so little
> weight. Although supportability might prove
> determinative, that can only be decided after
> consideration of the other factors. These
> include the fact of examination, the length
> of the treatment relationship and frequency

14

of examination, and the nature and extent of
the treatment relationship. See 20 C.F.R. §
404.1527(d)(1)-(2). These factors may not
uniformly weigh in favor of Dr. Wren's and
Dr. Woods's opinions, but they would not be
insignificant here. Regardless, they must be
considered. It is true that the ALJ is under
no obligation to *explicitly discuss* each
factor in the decision. <u>See</u> <u>Oldham</u>, 509 F.3d
at 1258. However, the ALJ's cursory treatment
of the physicians' opinions in this case does
not satisfy us that the ALJ *considered* all
the relevant factors.

As in <u>Andersen</u>, in this case, there is no indication in the

ALJ's written decision that he considered any factor other than

supportability in discounting the opinions of Dr. Pankow.[3]  The

court cannot uphold the ALJ's decision based solely on

supportability.  Although supportability might prove

determinative, that can only be decided after consideration of

the other factors.

Defendant, in his brief, argues that the treatment notes

repeatedly state that plaintiff has "no" limitations (Doc. 11 at

8).  As stated by defendant, the treatment notes, under the

category of "Impairments," indicate "no limitations noted" (e.g.,

R. at 223, 225, 230).  However, the ALJ never mentioned these

statements in the treatment notes, and thus did not expressly

rely on them to discount the opinions of Dr. Pankow.  There is no

indication from the treatment notes that references to

---

[3]See the factors previously set forth in <u>Watkins</u>, <u>supra</u> at
6-7.

impairments or limitations was meant to include limitations in a person's ability to work.  Furthermore, the undisputed opinion evidence from Dr. Pankow and Dr. Hutchison is that plaintiff has numerous limitations regarding her ability to work, and the ALJ himself found that plaintiff had a number of limitations in her ability to work.  The only question is the degree or severity of those limitations.  The court finds that these notes do not provide a reasonable basis to only discount the opinions of Dr. Pankow, but not to discount the opinions of Dr. Hutchison or the findings of the ALJ.

Defendant's brief also includes a number of other arguments for discounting the opinions of Dr. Pankow, (e.g., Dr. Pankow used a check-the-box form; there is no evidence he understood the meaning of the terms used; Dr. Hutchison was "more" familiar with social security disability programs in his capacity as a medical expert; Doc. 11 at 6-7, 17).  However, none of these arguments were ever mentioned by the ALJ in his decision.  An ALJ's decision should be evaluated based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that

treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

        The ALJ discounted the opinions of Dr. Pankow because he alleged that his opinions were not supported by the treatment notes.  As in Krauser, 638 F.3d at 1331, the ALJ failed to specifically identify what in the treatment records did not support or were inconsistent with the limitations set forth by Dr. Pankow.  Thus, as in Langley, 373 F.3d at 1123, the ALJ's reason for rejecting the opinions of Dr. Pankow were not sufficiently specific to enable this court to meaningfully review the findings.  Furthermore, the ALJ erred by failing to consider any factor other than supportability in discounting the opinions of Dr. Pankow.  Therefore, this case shall be remanded in order for the ALJ to make new findings, in accordance with the case law set forth above, regarding the relative weight to give to the medical source opinions.  On remand, the ALJ should identify what in the treatment records do not support or are inconsistent with the opinions of Dr. Pankow.  Krauser, 638 F.3d at 1331 n.3.  The ALJ will also need to make new findings at step three and will need to make new RFC findings after giving proper consideration

to the medical source opinions.

## IV.   Did the ALJ err by failing to consider or discuss a third-party statement?

The record contains a third-party statement by plaintiff's mother-in-law, Barbara Smith (R. at 90-97).  When this case is remanded, the ALJ should consider this statement in accordance with Blea v. Barnhart, 466 F.3d 903 (10th Cir. 2006).  In Blea, the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and severity of her husband's impairments.  The court held as follows:

> In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony." Adams, 93 F.3d at 715. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all "clear that the ALJ considered [Mrs. Blea's] testimony in making his decision." Adams, 93 F.3d at 715. Additionally, Mrs. Blea's testimony regarding her husband's suicidal thoughts is not only uncontroverted; it serves to corroborate Dr.

18

Padilla's psychiatric examination of Mr.
Blea, where he stated that Mr. Blea has been
dysthymic for years. [citation to record
omitted] Thus, the ALJ's refusal to discuss
why he rejected her testimony violates our
court's precedent, and requires remand for
the ALJ to incorporate Mrs. Blea's testimony
into his decision. "Without the benefit of
the ALJ's findings supported by the weighing
of this relevant evidence, we cannot
determine whether his conclusion[s] ... [are]
supported by substantial evidence." Threet,
353 F.3d at 1190; see also Baker v. Bowen,
886 F.2d 289, 291 (10th Cir.1989) ("[W]here
the record on appeal is unclear as to whether
the ALJ applied the appropriate standard by
considering all the evidence before him, the
proper remedy is reversal and remand.").

Blea, 466 F.3d at 915.  According to Blea, the ALJ, at a minimum,

should indicate in his decision that he has considered the 3rd

party testimony.

**V.  Did the ALJ err by failing to recontact Dr. Pankow?**

This issue was not addressed by the ALJ in his decision.

Therefore, on remand, the ALJ should determine whether or not

there is a need to recontact Dr. Pankow in accordance with the

case law and regulations and rulings of the agency.[4]

---

[4]In the case of Robinson v. Barnhart, 366 F.3d 1078 (10th
Cir. 2004), the court held as follows:

If evidence from the claimant's treating
doctor is inadequate to determine if the
claimant is disabled, an ALJ is required to
recontact a medical source, including a
treating physician, to determine if
additional needed information is readily
available. See 20 C.F.R. §§ 404.1512(e)(1)
and 416.912(e)(1) ("We will seek additional
evidence or clarification from your medical

**VI.   Did the ALJ err by failing to obtain records of plaintiff's hospitalization?**

42 U.S.C. § 423(d)(5)(B) states as follows:

> In making any determination with respect to
> whether an individual is under a disability
> or continues to be under a disability, the

---

> source when the report from your medical
> source contains a conflict or ambiguity that
> must be resolved, the report does not contain
> all the necessary information, or does not
> appear to be based on medically acceptable
> clinical and laboratory diagnostic
> techniques."); see also McGoffin, 288 F.3d at
> 1252 (holding ALJ had obligation to recontact
> treating physician if validity of his report
> open to question). The responsibility to see
> that this duty is fulfilled belongs entirely
> to the ALJ; it is not part of the claimant's
> burden. White v. Barnhart, 287 F.3d 903, 908
> (10th Cir.2001).

366 F.3d at 1084.  The court in Robinson then stated that if the
ALJ concluded that the treatment provider failed to provide
sufficient support for his conclusions about plaintiff's
limitations, the severity of those limitations, the effect of
those limitations on her ability to work, or the effect of
prescribed medication on her ability to work, the ALJ should have
recontacted the treatment provider for clarification of his
opinion before rejecting it.  366 F.3d at 1084.  In addition, SSR
96-5p states the following:

> Because treating source evidence (including
> opinion evidence) is important, if the
> evidence does not support a treating source's
> opinion on any issue reserved to the
> Commissioner and the adjudicator cannot
> ascertain the basis of the opinion from the
> case record, the adjudicator must make "every
> reasonable effort" to recontact the source
> for clarification of the reasons for the
> opinion.

1996 WL 374183 at *6.

Commissioner of Social Security shall
consider all evidence available in such
individual's case record, **and shall develop a
complete medical history of at least the
preceding twelve months for any case in which
a determination is made that the individual
is not under a disability. In making any
determination the Commissioner of Social
Security shall make every reasonable effort
to obtain from the individual's treating
physician (or other treating health care
provider) all medical evidence, including
diagnostic tests, necessary in order to
properly make such determination**, prior to
evaluating medical evidence obtained from any
other source on a consultative basis.

(emphasis added).  Although the claimant has the burden of

providing medical evidence proving disability, the ALJ has a

basic duty of inquiry to fully and fairly develop the record as

to material issues.  This duty is especially strong in the case

of an unrepresented claimant.  The ALJ has a duty to develop the

record by obtaining pertinent, available medical records which

come to his attention during the course of the hearing.  Carter

v. Chater, 73 F.3d 1019, 1021, 1022 (10th Cir. 1996).

In the case of Madrid v. Barnhart, 447 F.3d 788, 790 (10th

Cir. 2006), the court set forth the applicable law regarding the

ALJ's duty to develop the record regarding medical evidence:

"It is beyond dispute that the burden to
prove disability in a social security case is
on the claimant." Hawkins v. Chater, 113 F.3d
1162, 1164 (10th Cir.1997); 20 C.F.R. §
404.1512(a) ( "[Y]ou must bring to our
attention everything that shows that you are
...disabled."). Nevertheless, because a
social security disability hearing is a

nonadversarial proceeding, the ALJ is
"responsible in every case 'to ensure that an
adequate record is developed during the
disability hearing consistent with the issues
raised.' " Hawkins, 113 F.3d at 1164 (quoting
Henrie v. United States Dep't of Health &
Human Servs., 13 F.3d 359, 360-61 (10th
Cir.1993)); 20 C.F.R. § 404.944 (requiring
the ALJ to "look[ ] fully into the issues").
Generally, this means that the "ALJ has the
duty to...obtain[ ] pertinent, available
medical records which come to his attention
during the course of the hearing." Carter v.
Chater, 73 F.3d 1019, 1022 (10th Cir.1996).
Moreover, the ALJ's "duty is heightened" when
a claimant, like Mr. Madrid, appears before
the ALJ without counsel. Henrie, 13 F.3d at
361; Musgrave v. Sullivan, 966 F.2d 1371,
1374 (10th Cir.1992) (same); see also Dixon
v. Heckler, 811 F.2d 506, 510 (10th Cir.1987)
("The [ALJ's] duty of inquiry takes on
special urgency when the claimant has little
education and is unrepresented by counsel.").

At the hearing, plaintiff testified regarding two

hospitalizations for mental illness; plaintiff further indicated

that Prairie View did psychiatric testing on her in November 2007

(R. at 371-372).   The ALJ noted that if testing was done, "we

need to get those records" (R. at 373).   The record shows that

plaintiff, subsequent to the hearing, obtained and made available

to the court additional records from Prairie View (R. at 302-

310).   In light of plaintiff's voluntary production of these

records, and the lack of any indication that those records were

incomplete, the court finds that plaintiff has failed to

establish any duty by the ALJ to obtain additional records.   See

Steadman v. Apfel, 1999 WL 76907 at *4 (10th Cir. Feb. 18,

22

1999)(plaintiff's representative submitted numerous other medical records to the ALJ after the hearing; thus, the ALJ could reasonably assume that plaintiff's representative purposely chose not to submit the hospital records, perhaps because they were only of minor importance); Graham v. Apfel, 1998 WL 321215 at *2-3 (10th Cir. June 5, 1998)(plaintiff's counsel submitted other medical records to the ALJ after the hearing; the ALJ could reasonably assume that plaintiff chose not to submit this additional evidence because it was not relevant).  However, because this case is being remanded, plaintiff can seek to obtain any additional records which may exist and provide them to the ALJ.

**VII.  Did the ALJ err by failing to order a consultative examination?**

At the hearing, when counsel and the ALJ were discussing the possibility of obtaining records from Prairie View, the ALJ stated that if they could not obtain the records from Prairie View, "we may need to go ahead and order the psychological evaluation any way" (R. at 373).  As noted above, plaintiff did provide additional records from Prairie View, and the ALJ did not order a consultative examination.  It is not clear from the decision why the ALJ did not order the consultative examination.  However, the receipt of the records from Prairie View subsequent to the hearing, and the opinion evidence from Dr. Pankow and Dr.

23

Hutchison may have led the ALJ to determine that a consultative examination was not necessary.

Consultative medical examinations may be ordered by the ALJ when the information needed is not readily available from medical treatment sources.  20 C.F.R. §§ 404.1512(f), 404.1519a(a)(1). The Commissioner has broad latitude in ordering consultative examinations.  Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim.  Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary.  There must be present some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation.  The claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.  When the claimant has satisfied this burden in that regard, it then becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.  In a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.  In

the absence of such a request by counsel, the court will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record. The ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.  Hawkins v. Chater, 113 F.3d 1162, 1166-1168, 1169 (10th Cir. 1997; see Madrid v. Barnhart, 447 F.3d 788, 791-792 (10th Cir. 2006)(where additional tests are required to explain a diagnosis already in the record, resort to a consultative examination may be necessary).

The ALJ has broad latitude in deciding whether to order a consultative examination.  Based on the evidence before the court, the court does not find that the ALJ clearly erred by failing to order a consultative examination.

**VIII.  Did the ALJ err in his credibility analysis?**

Plaintiff also asserts error by the ALJ in his credibility findings (Doc. 8 at 25).  The court will not reach this because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

However, the court would note the ALJ's statement that

plaintiff was able to sit through the hearing without any pain behavior (R. at 23).  The ALJ cited to no medical evidence concerning observable pain behaviors.  The ALJ is not a medical expert on identifying observable pain behaviors.  Thus, the ALJ is not entitled *sua sponte* to render a medical judgment on whether plaintiff displayed any pain behavior without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations, he is not in a position to render a medical judgment.  Coleman v. Barnhart, Case No. 05-1062-MLB (D. Kan. Nov. 29, 2005; Doc. 15 at 20-21); see Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  On remand, the ALJ cannot rely on observable pain behaviors absent medical evidence to support his findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 4th day of November 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge